GENERAL ELECTRIC COMPANY *v.* REVIEW BOARD OF THE
INDIANA EMPLOYMENT SECURITY DIVISION AND
MARGARET A. COOPER ET AL.

[No. 2-776A271. Filed June 29, 1977.]

*Clifford E. Simon, Jr., Shoaff, Keegan, Baird & Simon,* of
Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *David L. Steiner,*
Deputy Attorney General, for appellee.

STATON, P.J.—On May 13, 1975, the crafts employees of
General Electric Company, Fort Wayne, Indiana, struck.
After the strike began, the first stage of the assembly line
walked out in sympathy with the strikers, causing a lack
of work in the second stage. Six workers in the second stage
filed claims for unemployment benefits; the claims were
granted, and General Electric appeals.

Because the claimants were unemployed due to a work
stoppage caused by a labor dispute, and because the claimants
did not carry the statutorily imposed burden of requalifying
themselves for benefits, we must reverse.

## I.

## Work Stoppage Because of Labor Dispute

General Electric correctly directs our attention to IC 1971, 22-4-15-3 (Burns Supp. 1976), which provides in pertinent part:

> "Work stoppage because of labor dispute—Individual not participating—Separate units of work—Exception.— (a) An individual shall be ineligible for waiting period or benefit rights: for any week with respect to which an employee of the division . . . finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed;
>
> (b) This section shall not apply to an individual . . . if all of the following conditions exist: He is not participating in or financing or directly interested in the labor dispute which caused his unemployment: [;] and he does not belong to a grade or class of workers of which, immediately before the commencement of his unemployment, there were members employed at the same premises as he, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress; . . ." (Original brackets).

General Electric reasons that the six claimants were ineligible for benefits under IC 1971, 22-4-15-3 (a) because the work stoppage existed "because of a labor dispute," and because they do not requalify under the excepting subsection (b).

Review Board agrees in its brief that the work stoppage resulted from a labor dispute, but concludes that the claimants were eligible for benefits because they met the three criteria set out in subsection (b). Two considerations are preliminary to an analysis of the applicability of the three criteria to the eligibility status of the six claimants. First, did the labor dispute *cause* the work stoppage? *See Blakely* v. *Review Board of Indiana Emp. Sec. Div.* (1950), 120 Ind. App. 257,

90 N.E.2d 353. We conclude that it did. Second, the purpose of the Employment Security Act is to avoid the denial of benefits to workers who became unemployed "through no fault of their own." *City Pattern & F. Co.* v. *Review Bd. of Ind. Emp. Sec. Div.* (1970), 147 Ind. App. 636, 263 N.E.2d 218. We conclude that the claimants were in the position of being unemployed through no fault of their own.

## II.

### Requalification

A claimant may requalify for benefits under IC 1971, 22-4-15-3 (b) if three conditions are met.

(1) He is not participating in or financing or directly interested in the labor dispute which caused his unemployment.

(2) He does not belong to a grade or class of workers of which, immediately before the commencement of his unemployment, there were members employed at the same premises as he, any of whom are participating in or financing or directly interested in the dispute.

(3) He has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress.

*All* of these criteria must be established. And, *Auker* v. *Review Board, Etc.* (1947), 117 Ind. App. 486, 71 N.E.2d 629, held that the burden is on the claimants to requalify themselves for benefits.

On appeal we may examine the record only to determine whether the decision of the board is supported by some evidence of probative value. *Ingress-Plastene, Inc.* v. *Review Bd. of Ind. Emp. Sec. D.* (1968), 143 Ind. App. 95, 238 N.E.2d 490. We must accept the facts as conclusive and may disre-

gard them only in the event reasonable men would be bound to reach a different conclusion on the evidence in the record. *Jackson* v. *Review Board of Indiana Emp. Sec. Div.* (1963), 135 Ind. App. 22, 191 N.E.2d 525. We will not weigh evidence; we consider only that evidence most favorable to the board's decision. *Decker* v. *Review Board of Indiana Employ. Sec. Div.* (1963), 134 Ind. App. 164, 186 N.E.2d 890. But, if reasonable men would be bound to reach the opposite conclusion from the evidence in the record, the decision of the board may be reversed. *See Williamson Co.* v. *Review Bd. of Indiana Emp. Sec. Div.* (1969), 145 Ind. App. 266, 273, 250 N.E.2d 612, 616.

The six claimants who had worked in the second stage operation and who were laid off because the first stage workers had walked out in sympathy with the strikers satisfied the first requirement under 22-4-15-3 (b). "Participating" and "directly interested" have been held to exist independently of each other. *Auker* v. *Review Board, Etc., supra.* Those "directly interested" are those whose wages, hours, or conditions of work would be affected by the outcome of the dispute. *Auker* v. *Review Board, Etc., supra.* These six claimants were not participating in the strike; the evidence clearly showed that they worked as much as possible. The claimants were not financing the strike.[1] They were not directly interested in the strike; there is no evidence in the record that the claimants would have been benefitted by the strike in any way; furthermore, testimony revealed that the claimants did not even know what the strike was about.

General Electric does not contend that the six claimants voluntarily stopped working. An attorney for General Electric summarized the predicament at the hearing: "We have no information that these people took part in anything at all.

---

[1]. Mere membership in the same union does not constitute the necessary financial nexus between claimants and strikers. *See General Motors Corp.* v. *Review Board, Ind.Emp.Sec.Div.* (1970), 146 Ind.App. 278, 255 N.E.2d 107. Here, there was no showing that the regular union dues of the claimants were used to support the strikers.

They were just victims of the work is what it amounted to." The six claimants worked as much as possible; they did not walk out in sympathy with the strikers; they satisfied the third criterion.

But, General Electric correctly asserts that the claimants did not meet the second requirement under 22-4-15-3 (b) in that the claimants were of the same class of workers as those workers who walked out in sympathy with the strikers. The Review Board specifically found that claimants "were not in the same grade or class of workers involved in the strike or those individuals who walked out in sympathy with them. . . ." The only evidence in the record which supports this finding is the following statement in response to the Referee's question:

"REFEREE: Well, I'm just concerned about these six people now. Were they in the same labor category as the people that walked out and were on strike?

"MR. FREMION: No, they were not."

However, taken in context with the other evidence in the record, including an earlier statement by Mr. Fremion,[2] it is indisputable that while the claimants and the craft strikers were not of the same grade or class, the claimants and those who walked out in sympathy with the craft workers *were* of the same grade or class. The first stage workers who walked out were assembly line employees, just as were the claimants. The first stage workers were, by walking out in sympathy with the strikers, participating in the labor dispute; and the second stage workers were of the same grade or class as the first stage workers. Thus, the second criterion prevents the claimants from requalifying themselves.

The decision of the Review Board is reversed and remanded for entry of an order consistent with this opinion.

---

2. "REFEREE: Were they in the same labor grade or classification?

"MR. FREMION: People in sympathy that walked out, were, but the main group that walked out originally were in the maintenance group."

Hoffman and Garrard, JJ., concur.

NOTE.—Reported at 364 N.E.2d 142.