PHYLLIS A. OSBORN v. REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION WILLIAM H. SKINNER, CHAIRMAN, J. FRANK HANLEY, II AND RALPH F. MILES AS MEMBERS AND FITZ'S LOUNGE

[No. 2-177A24. Filed October 18, 1978.]

---

*E. Frank Welke, Cook, Cook & Welke*, of Kokomo, for appellant.

*G. Richard Ellis, Ellis, Gamble, Nolan & Deardorff,* of Kokomo, for appellees.

YOUNG, J. — Appellant Phyllis Osborn brings this proceeding to challenge a negative decision of the Review Board of the Indiana Employment Security Division. We affirm.

Osborn's assignment of errors includes the following three allegations. First, she claims the decision is contrary to law. Second, she argues that the decision lacks sufficient findings of fact. Third, she claims a denial of due process.

Our consideration of these issues requires that we review the circumstances surrounding the termination of Osborn's employment. In doing so, we are cognizant that it is not our role to consider the "sufficiency of the evidence" as that term is customarily employed. Rather, in a review of an administrative agency proceeding, questions of "sufficiency" are more accurately directed to the sufficiency of the facts found. *Wolfe v. Review Bd. of Ind. Emp. Sec. Div.* (1978), 176 Ind.App. 287, 375 N.E.2d 652, 655. On the other hand, if Osborn is complaining about a lack of evidence to support the Board's findings of fact, her argument should focus on the concept of "substantial evidence" and the various rules for determining whether such evidence is present in the record. Osborn's brief does not recognize these distinctions. As a result the issues she raises are not clearly presented. Nonetheless, her arguments are sufficiently stated to enable us to address the merits.

The circumstances leading to Osborn's discharge are as follows. Mrs. Osborn was employed as a cocktail waitress by the appellee, Fitz's Lounge. On August 12, 1975, she visited the lounge on a day off in company with her husband to celebrate his birthday. The festivities continued into the early morning hours of August 13. By this time Mrs. Osborn, who weighed between 105 and 110 pounds, had consumed in her estimate between six and eight small bottles of Cold Duck. The testimony of Mrs. Fitz, a co-owner of the lounge, and of the manager, Jacob Britbec, was that Mrs. Osborn was intoxicated.

Near the end of the Osborns' visit to the lounge, Mrs. Fitz discovered that a fire extinguisher had been removed from its normal position and placed in a passageway. Mrs. Osborn and a bartender were huddled over

it. There was no legitimate reason for anyone to utilize the extinguisher. The hose had been removed and the pin was in the process of being pulled. Irritated, Mrs. Fitz twice demanded to know what was going on. Neither Mrs. Osborn nor the bartender responded. After this confrontation Mrs. Osborn departed.[1] Mrs. Osborn's recollection of this incident, given in testimony before a referee of the Employment Security Division, was that she did not know how the extinguisher came to be placed in the passageway. She explained that she was merely attempting to drag the extinguisher back to its normal resting position.

Subsequently Osborn was discharged. The testimony before the referee disclosed several potential bases for the discharge. The parties and the Review Board appeared to treat the fire extinguisher incident as the real reason for the termination. We will do likewise.

Following the discharge, Mrs. Osborn first presented her claim for unemployment compensation to a deputy of the Employment Security Division. The deputy denied the claim for the reason that Osborn had been discharged for just cause within the meaning of IC 22-4-15-1 (Burns Code Ed.). The referee reversed the decision of the deputy. However, the Review Board overruled the referee and found in favor of Fitz's Lounge. The Board concluded that although Osborn was off-duty, her intoxication on the employer's premises coupled with the fire extinguisher incident, justified the discharge.[2]

Under the label of "contrary to law," Osborn initially argues that there

---

1. Jacob Britbec, the manager, testified that Mrs. Osborn was intoxicated at this time. Prior to her departure from the lounge, Osborn stopped briefly at Britbec's office. Britbec had to assist her in walking because she was "wobbly."

2. The pertinent findings and conclusions of the Board are as follows:

"[The Board] further finds that claimant was discharged because she and another employee, when claimant was off duty, removed the hose and pin on a fire extinguisher located on the employer's premises.

"It further finds that claimant was intoxicated at the time of the incident involving the fire extinguisher.

"It further finds that although claimant was off duty at the time of the incident with the fire extinguisher, her actions, in light of her intoxication, indicate a wanton and wilful disregard of the employer's best interests.

"DECISION: The decision of the referee in Case No. 75-A-9264 is hereby reversed this 8 day of December, 1976, and the statutory disqualification imposed effective week ending February 9, 1975.

is insufficient evidence to sustain the findings and conclusions of the Board. She mixes this allegation with the contention that the Board found that she acted in a "wanton and wilful" manner when there was no evidence to support this charge. A second prong of her attack is that the Board erred in applying the "wanton and wilful" standard in the first instance. She also weaves into her argument the contention that because she was off-duty at the time of the incident, she should not incur the penalty imposed by I.C. 22-4-15-1.

Before taking up these questions, we first consider the appropriate standard of review. Insofar as Osborn attacks the Review Board's findings of fact, we will uphold those findings if they are supported by substantial evidence of probative value. *Ervin v. Review Bd. of Ind. Emp. Sec. Div.* (1977), 173 Ind.App. 592, 364 N.E.2d 1189, 1193; *General Elec. Co. v. Review Bd. of Ind. Emp. Sec. Div.* (1977), 173 Ind.App. 457, 364 N.E.2d 142, 144; *Skirvin v. Review Bd. of Ind. Emp. Sec. Div.* (1976), 171 Ind.App. 139, 355 N.E.2d 425. Second, to the extent that Osborn questions the Board's application of I.C. 22-4-15-1 to the facts as so found, we will affirm the Board's decision on this question of law so long as the decision meets the test of reasonableness. *City of Evansville v. Southern Ind. G. & E. Co.* (1975), 167 Ind.App. 472, 339 N.E.2d 562, 574. "All that is needed to support the Commission's interpretation [of the statute] is that it has 'warrant in the record' and a 'reasonable basis in law'." *Unemployment Compensation Comm'n v. Aragan* (1946), 329 U.S. 143, 153-54, 67 S.Ct. 245, 250, 91 L.Ed. 136. We may affirm the Board's decision concerning the interpretation of the statute even though we might have been inclined to decide the matter differently had we ourselves been members of the Board. *Id.* Were the rule otherwise, this Court would displace the administrative department of government.

Turning to the questions before us, the Indiana Employment Security Act, I.C. 22-4, as originally enacted, penalized an employee who had been "discharged for misconduct in connection with his work." Acts 1947, Ch. 208, Sec. 1501, p. 704. Construing this language, the appellate courts found such "misconduct" to be present in instances where the employee's acts exhibited a wanton or wilful disregard of the employer's interests. *Merkle v. Review Bd. of Ind. Emp. Sec. Div.* (1950), 120 Ind.App. 108,

90 N.E.2d 524, 526; *Osojnick v. Review Bd. of Ind. Emp. Sec. Div.* (1959), 129 Ind.App. 515, 158 N.E.2d 656, 659.

The Employment Security Act no longer speaks in terms of "misconduct." At the time of Osborn's discharge and as presently worded, the Act imposes a penalty on an employee who has been discharged for "just cause." I.C. 22-4-15-1. Nonetheless, in the case at hand the Board couched its decision in the "wilful and wanton" language which this Court itself had developed under the earlier statute. *Merkle; Osojnick, supra.* We will not reverse the Board simply because it has applied the present statute by utilizing our language which construed the predecessor statute. Furthermore, a conclusion by the Board that Osborn exhibited a "wanton and wilful disregard of the employer's best interests" is simply an alternative way of stating that "just cause" existed for the discharge of Osborn. "Just cause has been said to refer to a wilful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's standard of conduct . . . ." 81 C.J.S. *Social Security & Public Welfare,* Sec. 221, p. 427 (1977). Accordingly, the Board did not err simply because it expressed its conclusion in terms of wanton and wilful conduct.

We now address Osborn's related contention that the evidence does not support the Board's decision. We point out that Osborn does not deny that the incident with the fire extinguisher took place. Her argument appears to be that the incident was not of sufficient gravity so as to warrant a discharge for "just cause" within the meaning of I.C. 22-4-15-1. In turn, Osborn's principal argument in support of this defense is that her off-duty status immunized her from incurring the penalty imposed by I.C. 22-4-15-1. We disagree.

The definition of "discharge for just cause" contained within I.C. 22-4-15-1 lists several specific instances of misconduct. The definition concludes with the catch-all statement that "discharge for just cause" includes "any breach of duty in connection with work which is reasonably owed employer by an employee. In the present case the Review Board could reasonably conclude that the fire extinguisher incident fell within this clause. Mrs. Osborn returned to her place of employment to celebrate her husband's birthday. While this visit may have been inspired by a proper motive, the Board could

rightly conclude that her subsequent conduct was injurious to the employer and that such conduct amounted to a breach of duty in connection with work. We repeat that Mrs. Osborn, a relatively small woman, consumed between six and eight bottles of Cold Duck. While intoxicated, she was discovered to be tinkering with a fire extinguisher. At the time of the incident she could not explain her behavior. If she had succeeded in disabling the extinguisher, her conduct could have placed herself and other patrons of the lounge in danger in the event of a fire. Moreover, a person who is known by other patrons to be an employee of the lounge and who becomes intoxicated on her employer's premises, thereby brings the employer's reputation into disrepute. We believe an employer can justifiably expect that its employees will comport themselves in such a manner to preserve the reputation of the employer.[3] Furthermore, this duty may repose on an employee even though she happens to be off-duty.[4]

Our conclusion is consistent with I.C. 22-4-1-1 which sets forth the public policy underlying the Indiana Employment Security Act. The goal of the Act is to protect workers who become "unemployed through no fault of their own." The conclusion we reach in this case advances this policy in full measure. The discharge of Osborn was the outcome of her own misconduct. To borrow the words of the statute, the fault was her own.

In conclusion, there was substantial evidence to support the Board's findings that Osborn was intoxicated and that she engaged in misconduct in connection with the extinguisher. From these findings of fact the Board could properly conclude that Osborn's subsequent discharge was for just cause. For all these reasons the decision of the Board was not contrary to law.[5]

---

3. Mrs. Fitz, a co-owner of the lounge, testified before the referee that the reputation of the lounge could have been damaged by an employee's intoxication on the premises and by the fire extinguisher incident.

4. *See* Annot., "Conduct or Activities of Employees during Off-Duty Hours as Misconduct Barring Unemployment Compensation Benefits," 89 A.L.R.2d 1089 (1963); 81 C.J.S. *Social Security & Public Welfare*, Sec. 222, p. 429 (1977).

5. We distinguish *Youngstown Sheet & Tube Co. v. Review Bd. of Ind. Emp. Sec. Div.* (1963), 135 Ind.App. 461, 191 N.E.2d 32. The result reached in *Youngstown* was based on the explicit premise that the employment relation had ended. *Id.*, 191 N.E.2d at 36.

Osborn's second principal argument is that the Board's decision is fatally defective for lack of a finding of fact concerning Osborn's actions and intent. She claims that such findings as whether she acted with malice or evil design are essential before the Board could conclude that her behavior was "wanton and wilful." We disagree.

As we have explained at length above, the appropriate inquiry is whether the Board could reasonably conclude that Osborn was discharged for just cause. I.C. 22-4-15-1. The findings of fact were supported by substantial evidence. On the basis of these findings the Board reasonably concluded that the discharge was for just cause. In this light, no need exists for the Board to have made findings of fact on Osborn's subjective intent. Her discharge was reasonably justified on the basis of her objective behavior and findings on her subjective intent were unnecessary.

The final issue raised by Osborn is that she was denied due process of law. This deprivation, she claims, occurred when she failed to receive notice of the hearing before the Review Board. We acknowledge that this notice could have had importance for Osborn because the Review Board overruled the referee and found against her. However, we find no lack of due process.

Initially we note that this issue of notice stands before us in an awkward posture. The record recites that notice was sent, apparently by regular mail, to the parties and not returned undelivered.[6] However, Osborn does not quibble with the record for she apparently concedes that notice was *sent*. Her argument is that such notice was never *received*. Whether or not notice was received by Osborn is a question of fact. *Andrews v. Minter Coal & Coke Co.* (1929), 90 Ind.App. 320, 168 N.E 869. This court, however, is limited mainly to deciding questions of law. I.C. 22-4-17-12. On the other hand, we sympathize with Osborn because she never had an opportunity to present this fact issue to the Board. After she received the adverse decision

---

In contrast, the employment relation between Mrs. Osborn and Fitz's Lounge had not ended as of the time of the fire extinguisher incident. For at least so long as the relation endured, the employer had the right to expect that Mrs. Osborn would not engage in conduct substantially inimical to the employer's interest.

6. On the basis of this recital, we will presume that notice was indeed sent to Osborn. *Gould Motor Co. v. Vierra* (1959), 129 Ind.App. 410, 157 N.E.2d 204, 208.

of the Board, she had to quickly file her Notice of Intention to Appeal and her Assignment of Error in order to preserve her right to appeal. Failure to timely complete either step would have sacrificed the appeal. *Teepe v. Review Bd. of Ind. Emp. Sec. Div.* (1964), 136 Ind.App. 331, 200 N.E.2d 538 (failure to timely file notice of intention to appeal sacrifices appeal); *Smith v. Review Bd. of Ind. Emp. Sec. Div.* (1974), 159 Ind.App. 282, 306 N.E.2d 140 (same); *McGuire v. Review Bd. of Ind. Emp. Sec. Div.* (1951), 121 Ind.App. 377, 99 N.E.2d 263 (failure to timely perfect appeal). In sum, the fact-finding process of the Board was at an end and the case was now set for review of issues of law, but Osborn was left holding an unresolved issue of fact. This problem was not of her own making. Consequently we will address the issue on the assumption that Osborn failed in fact to receive notice.

Whether or not due process is afforded depends not on the particular hardship which may befall a person under exceptional circumstances. The issue, rather, is whether "this system of jurisprudence with its provisions for safeguarding the rights of litigants, is due process of law." *Miedreich v. Lauenstein* (1914), 232 U.S. 236, 246, 34 S.Ct. 309, 312, 58 L.Ed. 584. The Due Process Clause does not require the state to erect an ideal system for the administration of justice which is impervious to malfunctions. Consequently, the failure in fact of a person to receive notice does not necessarily indicate a deprivation of due process. *Miedreich v. Lauenstein, supra; see United States v. Smith* (1968), 3d Cir., 398 F.2d 173 (service by regular mail may be sufficient due process even though addressee claims non-receipt).

In the case at hand, the statutory scheme provided that notice of the hearing be sent to Osborn. The administrative agency did in fact send notice and we may presume that in the regular course of mail such notice would be received by Osborn. This "system of jurisprudence" meets the requirements of due process and Osborn cannot complain of any denial thereof. *Miedreich v. Lauenstein; United States v. Smith, supra.*

The decision of the Review Board is affirmed.

Robertson, J., concurs (sitting by designation).

Lowdermilk, J., concurs (sitting by designation).

NOTE—Reported at 381 N.E.2d 495.