Charles **PUCKETT**, Appellant
(Claimant Below),

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION and Youngstown Sheet and Tube Company, Appellees.**

No. 2–879A262.

Court of Appeals of Indiana,
Fourth District.

Dec. 9, 1980.

Rehearing Denied Jan. 23, 1981.

Albert C. Hand, Hand, Muenich & Wilk, Hammond, for appellant.

Theo. L. Sendak, Atty. Gen., Jeff G. Fihn, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Justice.

Claimant Charles Puckett seeks review of a decision of the Review Board of the Indiana Employment Security Division holding him ineligible for Trade Readjustment Allowance (TRA) under the federal Trade Act of 1974 because of his participation in an employer sponsored apprentice training program. Puckett challenges the Board's ineligibility decision as being contrary to law and inconsistent with its findings of fact.

More particularly, he argues that certification by the Department of Labor of employees of Youngstown Sheet and Tube Co. who became "totally or partially separated from employment" as eligible to apply for adjustment assistance mandated payment by the Division of TRA benefits. Additionally, he argues that under the Indiana Employment Security Laws, he is eligible for TRA benefits. Concluding that Department of Labor eligibility certification does not, as claimant argues, mandate payment of TRA benefits, we affirm the Review Board's decision holding claimant, electing participation in the apprentice program, ineligible for TRA benefits because he was employed and unavailable for work.

The Trade Act of 1974, 19 U.S.C. § 2271, *et seq.* (1976) provided a new adjustment assistance program for workers displaced because of increased imports. Under its terms a worker separated from employment certified by the Department of Labor as adversely affected by imported products is eligible to apply for adjustment assistance. The administration of TRA was contractually undertaken by the Indiana Employment Security Division pursuant to 19 U.S.C. § 2311. In accordance with 19 U.S.C. § 2272, claimant's employment at Youngstown Sheet and Tube was found to be adversely affected employment and thus, Youngstown employees totally or partially separated from employment were certified as eligible to apply for adjustment assistance.

Claimant, pursuant to the terms of a contract between the United Steelworkers Union and Youngstown, on August 26, 1977, elected placement in an apprentice training program as an alternative to being laid off. Only employees who had completed at least 25% of the total hours required to complete their apprenticeship program were eligible to make this binding election. In lieu of his regular pay, claimant received, by the terms of the union–employer contract, 100% of the amount he would have received from unemployment compensation and S.U.B. pay if laid off. (Supplemental Unemployment Benefits, an account into

which the employer pays 17 cents per employee hour worked.) The money to pay claimant, although paid in the form of corporate payroll checks with income tax and union dues deducted therefrom, came from the S.U.B. fund. Apparently, claimant's apprentice program salary for a 40 hour week equalled 80% of his regular earnings. He was required to attend both classroom sessions and on the job training five days a week, 8 hours per day.

On these facts, the Board made the following findings and conclusions:

FINDINGS AND CONCLUSIONS: The record reflects the claimant was employed by this employer until on or about August 26, 1977 when he accepted placement in an apprentice retention program as an alternative to being entirely laid off by the company. The record reflects as an employee under the apprentice retention program he would receive an amount in pay in excess of what he would receive as a laid off employee on unemployment and sub–pay in amount exceeding this by ten percent. Claimant argued at the hearing that in fact he was laid off from his regular full–time employment where he was adversely affected, which statement is unrebutted. However, claimant, at the same time he was laid off, was reemployed by the company through the apprentice retention program, and although not in his regular employment and technically laid off from that employment he was still employed by the company in an alternate area specifically through apprentice retention program where he earned an amount in excess of the amount he would have earned as a laid off employee and which apparently constituted eighty percent of his regular earnings. As an employee under the apprentice retention program the claimant was required to make himself available on a full time basis to the company for employment on the company premises either in classroom work or in on the job training through the apprentice program. Resultingly the claimant could not have sought employment or otherwise made himself able and available for employ-

ment as required by the Indiana Employment Security Act while he was regularly employed by the apprentice retention program.

From the foregoing findings it is concluded that the claimant on or about August 26, 1977 did become employed in the apprentice retention program as an alternative to a regular layoff with this company. It is further concluded that the claimant while having been separated from his regular employment in an affected area was reemployed by the company in a capacity earning at least 80% of his prior average weekly wage and was regularly employed in the apprentice retention program and therefore cannot be considered to be unemployed and separated from his employment with this Youngstown Sheet and Tube Company as required by the Trade Act of 1974.

▮▮▮▮ Before addressing the issues raised by claimant, we first consider the appropriate standard of review. Insofar as Puckett attacks the Review Board's findings of fact, we will uphold those findings if they are supported by substantial evidence of probative value. *Siddiqi v. Review Board of Indiana Employment Security Division*, (1979) Ind.App., 388 N.E.2d 613; *Skirvin v. Review Board of Indiana Employment Security Division*, (1976) Ind.App., 355 N.E.2d 425. Insofar as Puckett challenges the Board's application of relevant statutory provisions in reaching its conclusions of law, we will affirm so long as the decision meets the test of reasonableness. *Osborn v. Review Board of Indiana Employment Security Division*, (1978) Ind.App., 381 N.E.2d 495; *City of Evansville v. Southern Indiana Gas and Electric Co.*, (1975) 167 Ind.App. 472, 339 N.E.2d 562.

Turning to the issues before us, claimant first argues that the findings of the Review Board are in direct conflict with its decision. He apparently advances the position that the legal result flowing from Department of Labor certification and the Board's finding of separation from adversely affected employment is automatic entitlement to TRA. Without authority to deny such ben-

efits, Puckett argues that the Board's action in so doing is arbitrary and contrary to law.

■ It is true that the Board found specifically that Puckett was separated from adversely affected employment.[1] Such a finding is not, as Puckett urges however, in conflict, directly or indirectly, with the ineligibility decision of the Review Board. As the effect of Department of Labor certification is a question of law, we look to the federal Trade Act. The Trade Act, 19 U.S.C. § 2291 states in pertinent part that "[p]ayment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification . . . for any *week of unemployment* . . . ." Week of unemployment is defined in § 2319(14) as:

> . . . any week for which his remuneration for services performed during such week is less than 80% of his average weekly wage and, in which, because of lack of work—
>
> (A) if he has been totally separated, he worked less than the full-time week (excluding overtime) in his current occupation, or
>
> (B) if he has been partially separated, he worked 80 percent or less of his average weekly hours.

It is undisputed that Puckett was paid 80% of his average weekly wage and most importantly, that he participated in the apprentice program 40 hours per week. Thus by definition, there was no *week of unemployment* for which Puckett was entitled to TRA.

■ In addition, before actual entitlement to TRA is determined, resort must be had to Indiana Employment Security law, utilizing the availability and disqualification provisions found thereunder:

> Except where inconsistent with the provisions of this part and subject to such regulations as the Secretary may prescribe, the availability and disqualification of the State law—
>
> (1) under which an adversely affected worker is entitled to unemployment insurance (whether or not he has filed a claim for such insurance), or
>
> (2) if he is not so entitled to unemployment insurance, of the State in which he was totally or partially separated,
>
> shall apply to any such worker who files a claim for trade readjustment allowances. The State law so determined with respect to a separation of a worker shall remain applicable, for purposes of the preceding sentence, with respect to such separation until such worker becomes entitled to unemployment insurance under another State law (whether or not he has filed a claim for such insurance.)

19 U.S.C. § 2294.

It is, therefore, incorrect to assert, as claimant here does, that certification by the

---

1. Claimant also premises error on the Board's failure to consider him *partially separated* from employment. It is clear, however, from a reading of the definitional section of the Trade Act, 19 U.S.C. § 2319(6), that claimant was not partially separated from adversely affected employment:

   (6) The term "partial separation" means, *with respect to an individual who has not been totally separated*, that he has had—
   (A) his hours of work reduced to 80 percent or less of his average weekly hours in adversely affected employment, and
   (B) his wages reduced to 80 percent or less of his average weekly wage in such adversely affected employment.

   Claimant, instead, was *totally separated* from adversely affected employment:

   (11) The term "total separation" means the layoff or severance of an individual from employment with a firm in which, or in *a subdi-*

vision of which, adversely affected employment exists.

19 U.S.C. § 2319(11). (Emphasis added). Even if claimant was not totally separated from adversely affected employment, he is ineligible under the definition of partial separation because his hours of work in the apprentice program—40 per week—are not a reduction to 80% or less, of his "average weekly hours" in adversely affected employment, the term "average weekly hours" being defined to exclude overtime. 19 U.S.C. § 2319(5).

Neither is claimant partially unemployed as defined by Ind.Code 22–4–3–2. To be partially unemployed, an individual must be earning less than his weekly benefit amount. Claimant here earned more than his weekly benefit amount. There was, therefore, no error in the Board's refusal to consider claimant partially separated from adversely affected employment.

Department of Labor mandates payment of TRA benefits by the Review Board. Rather, denial of TRA benefits by the Review Board was proper so long as there existed substantial evidence of probative value to support its conclusion that Puckett was ineligible because employed and unavailable for work. We find there is such evidence.

■ The Board found that Puckett, although technically laid off from his regular employment, was reemployed by the company in an alternate area through the apprentice retention program. Thus, the Board concluded that Puckett, regularly employed in the apprentice program, could not be considered unemployed and separated from his employment as required by the Trade Act. Puckett challenges the Board's finding that he was reemployed. He argues that the apprentice retention program was just a "special layoff status" program, his position by participating in the program in effect no different than the position of those employees actually laid off. He also argues that the payments he received for participation in the apprentice program were not remuneration as defined by the Indiana Employment Security Act and, if he received no "remuneration" for services, then he is not disqualified under the federal act "week of unemployment" language earlier discussed.

In support, he relies upon language in the contract which makes reference to "the layoff training status" of apprentice retainees and company payroll records showing his status as "inactive"; the fact that payment comes from the S.U.B. fund; the provision for the program's discontinuance if the fund drops below 35%; the reduction in his hours and wages under the apprentice program to 80% of when regularly employed

and his ineligibility for certain company benefits as evidence the training program is just a special layoff status program.

Support for the Board's conclusion is found in the following facts: the apprentice retention option was offered only to certain eligible employees who were required to make a binding election to participate; the program required a 40 hour per week commitment from the participating employee; participation accelerated completion of claimant's craft status and rate, enabled him to receive 80% of his regular earnings and 10% more than a laid off employee receiving unemployment and S.U.B. pay.

The various facts relied upon to support both the Board's finding that Puckett was reemployed in an alternative program and Puckett's finding that he was laid off from employment are not in dispute. A basic premise of appellate review is that we cannot weigh the evidence. We conclude there was substantial evidence of probative value to support the Board's finding that Puckett was employed.[2] From such finding of fact, the Board could properly conclude, on the basis of both federal and state law, that Puckett was ineligible for TRA.

■ We are equally unpersuaded by Puckett's argument that the compensation received while retained in the apprentice program is not remuneration. Remuneration is very broadly defined by Ind.Code 22–4–4–1 as "all compensation for personal services, including, but not limited to, commission, bonuses, dismissal pay, vacation pay, sick pay, ... payments in lieu of compensation for services ...." "Compensation" has been defined as a *quid pro quo* for services rendered. *Kirby v. Indiana Employment Security Board*, (1973) 158 Ind.

---

2. Claimant's argument that his status is that of a laid off employee receiving an employer benefit, if accepted by this court, would lead to the irrational and untenable conclusion that the compensation received from the apprentice program work is non–deductible income under Ind.Code 22–4–15–8:

> Notwithstanding any other provisions of this act, ... benefits otherwise payable for any week under this act shall not be denied or reduced on account of any payment or pay-

ments the claimant receives, has received, will receive or accrues right to receive with respect to or based upon such week under a private unemployment benefit plan financed in whole or part by his employer or former employer.

As such, claimant, if otherwise eligible and qualifying would be entitled to full unemployment benefits under the Indiana Employment Security Act. Clearly such a Byzantine result was not contemplated by the legislature.

App. 643, 304 N.E.2d 225, 227. "Personal services" are defined as labor performed by an individual for the benefit of another. *Id.*, at 228. Although mindful that the apprentice program benefits participating employees like claimant by accelerating completion of their craft status, we believe the employer Youngstown is similarly benefitted. The employees work on the job four of the five days in which they are in training and, more importantly, they are being trained for work in the employer's business.

Puckett nonetheless argues the money received was not "wages" as defined by Ind. Code 22–4–4–2. TRA benefits are available to those workers separated from adversely affected employment for any "week of unemployment." "Unemployment", under both federal and state legislation is defined in terms of the amount of "remuneration for personal services" received. Because we have concluded that the compensation is "remuneration", we need not decide whether the money received is "wages."

■ Puckett also challenges the findings and conclusion of the Board that, because claimant was required to "make himself available on a full time basis to the company for employment on the company premises" ..., he could not, as required by the Indiana Act, have sought employment or otherwise made himself able and available for employment. The availability requirements are specifically made applicable to the Trade Readjustment Act by 19 U.S.C. § 2294. Puckett argues his work in the apprentice retention program fits within a statutory exception to the availability rule. Thus, he argues the Board's conclusion, being arbitrary and erroneous, is contrary to law. His position is that Ind.Code 22–4–14–3 [3] enables him to engage in the training program without disqualification on availa-

bility grounds. Ind.Code 22–4–14–3 exempts from availability requirements individuals in *Board approved* training programs. There is no evidence that the apprentice retention program was Board approved. Indeed, 640 I.A.C. 1–9–24 makes this private employer sponsored training program ineligible for Board approval:

> The Board or its duly authorized representative may approve such course for an individual only if he finds that (a) reasonable work opportunities for which the individual is fitted by training and experience do not exist in his locality, or the individual has been selected and referred to training under the Comprehensive Employment and Training Act of 1973; (b) the training course relates to an occupation or skill for which there are, or are expected to be in the immediate future, reasonable work opportunities in his locality; (c) the training course is offered by a competent and reliable agency, educational institution, or *employing unit other than an employing unit training workers for positions in its own establishment*; (d) the individual has the required qualifications and aptitudes to complete the course successfully; (e) *the individual is not receiving and is not eligible for subsistence payments or similar assistance under any public* or *private retraining program* other than the Comprehensive Employment and Training Act of 1973.

640 I.A.C. 1–9–24 (emphasis added). In light of the above regulation, the conclusion of the Board that claimant was unavailable for work is not contrary to the statute.

Claimant nonetheless argues he was available for work and "did attempt to work by selecting the apprentice layoff benefit to protect his job and go back to work

---

**3.** Ind.Code 22–4–14–3 provides in pertinent part:

> Notwithstanding any other provisions in this section, or IC 22–4–15–2, no otherwise eligible individual shall be denied benefits for any week because he is in training with the approval of the board, nor shall such individual be denied benefits with respect to any week in which he is in training with the approval

of the board by reason of the application of the provisions of this section with respect to the availability for work or active search for work or by reason of the application of the provisions of IC 22–4–15–2 relating to failure to apply for, or the refusal to accept, suitable work. The board shall by regulation prescribe the conditions under which approval of such training will be granted.

when work was available." By this argument, Puckett suggests as a matter of policy that participation in a training program, whether or not Board approved, should not defeat his right to unemployment benefits. In effect, he asks us to hold as a matter of law the apprentice retention program within the spirit even though not the letter of the statute. This we cannot do. We must affirm the Board's decision concerning the interpretation of the statute because it has "warrant in the record and a reasonable basis in law." *Osborn v. Review Board of Indiana Employment Security Division*, (1978) Ind.App., 381 N.E.2d 495, 498. We must affirm the Board's decision even though we might have been inclined to decide the matter differently had we ourselves been members of the Board. Were the rule otherwise, this court would displace the administrative department of government. *Id.*

We also find substantial evidence of probative value to support the Board's finding of unavailability. The phrase "available for work" is not defined by statute. Whether an individual is "available for work" within the meaning of the statute depends, Indiana courts have held, upon the facts and circumstances of each case as considered against the background and purposes of the legislation. *Miles v. Review Board of Indiana Employment Security Division*, (1951) 120 Ind.App. 685, 96 N.E.2d 128. It is a question of fact to be determined by the Review Board. Its decision is conclusive and binding so long as supported by substantial evidence of probative value. *Youngstown Sheet & Tube Co. v. Review Board of Indiana Employment Security Division*, (1954) 124 Ind.App. 273, 116 N.E.2d 650. Puckett's presence at employer premises was required 8 hours per day, 40 hours per week. His activity brought him financial benefit and prevented him from being available to a substantial field of employers. The Review Board could properly conclude on the basis of such evidence that Puckett, having removed himself from the job market, was not attached to the labor force, and was therefore unavailable for substitute employment. Thus, we conclude the

Review Board's decision is supported by substantial evidence of probative value, and, as such, is not contrary to law.

Affirmed.

CHIPMAN and MILLER, JJ., concur.