Wayne AARON, et al., Appellants,

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and General Motors Corporation, Appellees.**

No. 93A02–9904–EX–294.

Court of Appeals of Indiana.

April 18, 2000.

Rehearing Denied June 13, 2000.

Richard J. Swanson, Macey Macey and Swanson Indianapolis, Indiana, Daniel Sherrick, General Counsel, Phillip Gilliam, Associate General Counsel, UAW Legal Department, Detroit, Michigan, Attorneys for Appellants.

Douglas J. Heckler, Barnes & Thornburg, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

FRIEDLANDER, Judge

Wayne Aaron, as the named plaintiff, and other employees (the Employees) of General Motors Corporation (GM), appeal from a determination by the Unemployment Review Board of the Indiana Department of Workforce Development (the Review Board). One issue is presented for review:

> Did the Review Board err in determining the nature of payments made to the Employees which affected the deductibility of the payments from the Employees unemployment compensation benefits?

We reverse.

The evidence discloses that the Employees filed unemployment compensation claims during the summer of 1998. The Employees were laid off[1] as a result of a reduction in operations at GM plants stemming from strikes at two GM plants in Michigan. The union that represents the Employees, United Automobile, Aerospace and Agricultural Implement Workers of America (the UAW), and GM entered into strike settlement agreements on July 28, 1998.

The original contract (National Agreement) between the UAW and GM provides for Independence Day and Independence Week Shutdown Pay for employees who meet certain prerequisites. In 1998, the Employees did not meet the prerequisites to receive Independence Week Shutdown Pay or the Independence Day Pay because they were laid off at the time.

One component of the July 28, 1998 settlement is an agreement entitled "Memorandum of Understanding One Time Spe-

---

1. By using the phrase "laid off", we express no opinion on the Employees' status as "laid off" or "on strike".

cial Payment". *Record* at 450. The memorandum states:

As a result of these negotiations and without prejudice to the position taken by either party, and without setting any precedent in the disposition of any other case involving similar circumstances, the parties agree to the following:

Employees who were on strike or layoff status at [GM] locations due to the labor dispute at the Flint Metal Center and Delphi E Flint East and who did not receive Independence Week Shutdown and Holiday Pay as a result of being on said layoff or strike and were otherwise entitled to these pay provisions as stipulated in the GM–UAW National Agreement, shall receive a one time special payment in the amount they would have been entitled to had they not been on strike or layoff.

This payment will be made in an expeditious manner and taxed as a regular wage payment in accordance with Document No. 81 of the GM–UAW National Agreement.

This payment shall initially be made by [GM]. Thereafter, payments otherwise required by Paragraph III.A of the Memorandum of Understanding Joint Activities, 1996 GM–UAW National Agreement, shall be waived until [GM] is reimbursed for the total amount paid to employees as result of this Memorandum.

Further, the parties recognize that these payments may result in employees being ineligible for unemployment compensation already received. Employees impacted by such overpayment of unemployment compensation will be responsible to repay the State that provided the unemployment compensation.

*Record* at 450.

The Employees received the Independence Day and Independence Week Shutdown Pay pursuant to the memorandum. The National Agreement specified that June 29, June 30, July 1, and July 2 were the Independence Week Shutdown Pay days for 1998. The Employees received the payments on either August 13 or 14, 1998.

GM took the position that, with regard to unemployment compensation claims, the special Independence Week Shutdown Pay, paid in August, was attributable to the week the payments would have been paid under normal circumstances. If not for the strike/layoff circumstances, the Independence Week Shutdown Pay would have been paid during the week of July 10, 1998. Thus, the Employees would not have been entitled to unemployment compensation for the week of July 10, 1998, or would have been entitled to a reduced amount.[2] GM acknowledged that the special payments were treated as normal Independence Week Shutdown Pay for accounting, wage progression, and vacation seniority purposes.

The UAW and the Employees took the position that the special payments were treated the same as regular Independence Week Shutdown Pay for unemployment compensation purposes as well. Thus, the special payments would be attributable to the week in August when the payments were actually made. The character of the special payments determines when the payments should be deducted from unemployment compensation benefits.

On October 30, 1998, the Administrative Law Judge (ALJ) made a determination in favor of GM as to the Independence Day Shutdown Pay. The ALJ's decision states, in pertinent part:

*FINDINGS OF FACT:* * * *

On June 5, 1998, members of UAW Local No. 659 at the employer's Flint Metal Center went on strike. On June 11,

---

**2.** Ind.Code Ann. § 22–4–15–4 (West Supp. 1999) provides that employees are not entitled to unemployment compensation benefits for weeks when the employees receive "payments equal to or exceeding ... weekly benefit amount[s] in the form of ... deductible income." "Deductible income" is defined in IC § 22–4–5–1 (West 1991).

1998, members of UAW Local No. 651 at the employer's Delphi Energy and Engine Management Systems Flint East Plant went on strike. As the result of these strikes, the operations at the employer's Indiana facilities either ceased or were reduced. This resulted in the claimants' unemployment. The aforementioned strikes were settled by agreement dated July 28, 1998.

Pursuant to the National Agreement between the parties, in effect during the period in question, June 29, June 30, July 1, and July 2, 1998 were designated as Independence Week shutdown days. Employees who are not scheduled to work during any portion of the Independence Week shutdown period shall be paid up to 8 hours of pay per day, up to a maximum of 32 hours of pay. These provisions are set forth in Paragraph 202 of the National Agreement. In addition, certain requirements of eligibility for this pay are set forth in this paragraph. Pursuant to Paragraph 203 of the National Agreement, July 3, 1998, is designated as the Independence Day paid holiday. This paragraph also contains certain requirements in order for an employee to be eligible for this holiday pay up to 8 hours. Certain other eligibility requirements are set forth in Paragraph 208. Because of the claimants' unemployment, resulting from the above strikes, the claimants did not satisfy the eligibility requirements under the National Agreement for either the Independence Day, or Independence Week payments. If these claimants had been working, and were otherwise eligible, they would have received the Independence Week payment, and Independence Day holiday payment, on July 10, 1998. As a part of the negotiated settlement to the above strikes, the parties entered into a Memorandum of Understanding, dated July 28, 1998, which provide[d] that:

> [the ALJ set out a portion of the text of the Memorandum of Understanding]

Absent this Memorandum of Understanding, the claimants would have not received the Independence Week shutdown and holiday pay, as they would have not been eligible under the National Agreement as they were not on the active rolls. The Independence Week shutdown and holiday pay payments were made to the claimants on approximately August 14, 1998. On the claimants' paychecks, the payments were designated as 32 hours of miscellaneous pay for the Independence Week shutdown payment, and 8 hours miscellaneous pay for the Independence Day holiday pay payment. These payments were made to the claimants subsequent to the settlement of the above strikes. Although this payment was made after the settlement of the strikes, the employer maintained that the payments were to be allocated to the Independence Week shutdown period, and that those employees who received these payments, and who also received unemployment compensation for this same period, would be responsible to repay the state that provided such unemployment compensation. The employer also determined that individuals who received these payments were to have the pay period counted toward vacation entitlement under Paragraph 189 of the National Agreement, and toward wage progression to the maximum base rate pursuant to Paragraph 98 of the National Agreement, if otherwise eligible. * * * The above payments were made out of the employer's assets. Under the employer's records, the above payments constituted Independence Week shutdown pay and Independence Day holiday pay. Those employees of the employer who worked during the strike period, and were eligible for the Independence Week shutdown pay and Independence Day holiday pay, received these payments, and did not receive the above special payment.

*CONCLUSIONS OF LAW:* According to IC–22–4–15–4: "(a) An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which the individual receives, is receiving, or has received payments equal to or exceeding his weekly benefit amount in the form of (1) Deductible income as defined and applied in IC 22–4–5–1 and IC 22–4–5–2 . . . ." According to IC 22–4–5–1: "(a) Deductible income wherever used in this article, means income deductible from the weekly benefit amount of an individual in any week, and shall include, but not be limited to: (4) Pay for idle time; (5) Holiday pay; . . . (9) Payments in lieu of compensation for services . . . ." According (sic) IC 22–4–5–2: "(a) . . . Pay for idle time . . . shall be deemed to constitute deductible income with respect to the week or weeks for which such payments are made; however, if such payments made pursuant to the provisions of the National Labor Relations Act or the Fair Labor Standards Act or through agreement with a union are not, by the terms of the order or agreement under which said payments were made, allocated to any designated week or weeks, then, and in such cases, such payments shall be considered as deductible income in and with respect to the week in and which the same is actually paid. (b) Holiday pay which is paid not later than the normal payday for the pay period in which the holiday occurred shall be deemed to constitute deductible income with respect to the week for which such payments are paid. Holiday pay which is paid after the normal payday for the pay period in which the holiday occurred shall be considered as deductible income in and with respect to the week in which the same is actually paid." In *Briggs v. Review Board* (1995), Ind.App., 648 N.E.2d 1225, the court found that the only reasonable interpretation of this statute is that week "for which" holiday pay is made refers to the week when the holiday occurs, while the week "in which"

the payment is actually made refers to the week in which the employee receives the payment.

The [ALJ] finds that under the above statutes, the payments made to the claimants by the employer on or about August 14, 1998 constituted deductible income. However, the [ALJ] also finds that a distinction must be made between the payments made to the claimants for the Independence Week shutdown period, June 29, June 30, July 1, and July 2, 1998, and the Independence Day holiday pay payment. The [ALJ] finds that the Independence Week shutdown payments would constitute pay for idle time, or payments in lieu of compensation, and should therefore be allocated to the week for which such payments were made, that being week ending July 4, 1998, pursuant to the provisions of IC 22–4–5–2(a).

\* \* \*

*DECISION:* This is an initial determination in favor of the employer. All payments of Independence Week shutdown pay constitute deductible income for the week ending July 11, 1998. All payments of Independence Day holiday pay constitute deductible income for week ending August 15, 1998.

*Record* at 460–61.

The Employees requested review of the ALJ's decision by the Review Board. On March 31, 1999, the Review Board adopted the findings of fact and conclusions of law by the ALJ and affirmed the decision. On appeal, only the pay for the four days of Independence Week Shutdown Pay is in dispute. There is no dispute as to the Independence Day holiday pay.

■■■ "When reviewing a decision by the Review Board, we must determine whether the decision of the Board is reasonable in light of its findings." *Willett v. Review Bd.*, 632 N.E.2d 736, 738 (Ind.Ct. App.1994), trans. denied. Courts reviewing administrative decisions defer to the

agency's findings of fact, provided that the findings are supported by substantial evidence. *Briggs v. Review Bd.*, 648 N.E.2d 1225 (Ind.Ct.App.1995). The Review Board's decision may be reversed if, after examining the evidence before the Board, reasonable persons would be bound to reach a conclusion different than that reached by the Board. *Willett v. Review Bd.*, 632 N.E.2d 736.

■ The disagreement centers on the characterization of the Independence Week Shutdown Pay. The significance of the distinction between the Employees' characterization and GM's characterization of the special payments is revealed by examination of the statutes regarding the deductibility of the payments from unemployment compensation benefits. The Employees argue that the special payments constituted vacation pay deductible from unemployment compensation benefits when the payments were actually paid. GM urges that the special payments should be considered payments of a type that would be deductible from unemployment compensation benefits at the time the payments would have been paid for the Independence Week Shutdown Pay if not for the strike and layoffs. The Review Board determined that the special payments constituted either idle time pay or payments in lieu of compensation. According to the Review Board, the special payments are deductible from the Employees' unemployment compensation benefits in the week of July 10, 1998 when the payments would have been paid if not for the strike and layoffs.

Ind.Code Ann. § 22–4–5–1 (West 1991) provides, in pertinent part:

(a) "Deductible income" wherever used in this article, means income deductible from the weekly benefit amount of an individual in any week, and shall include, but shall not be limited to:

(1) remuneration for services from employing units, whether or not such remuneration is subject to contribution under this article, except as pro-

vided in subsection (c) [not including bonuses, gifts, or prizes];

* * *

(3) vacation pay;

(4) pay for idle time;

(5) holiday pay;

* * *

(9) payments in lieu of compensation for services....

That the special payments constitute income deductible from unemployment compensation benefits is not in dispute. The dispute concerns the timing of the deductions.

The nature of the deductible income dictates when the deduction from benefits occurs. *See* IC § 22–4–5–2. "Unemployment compensation benefits are calculated according to a statutory formula to arrive at a 'weekly benefit amount,' which is defined as the 'amount of benefits an eligible individual would be entitled to receive for a *particular week of total unemployment.*' " *Briggs v. Review Bd.*, 648 N.E.2d at 1227 (quoting Ind.Code § 22–4–2–15) (emphasis supplied in *Briggs* ). The particular week to which the special payments should be attributed for deduction purposes is at issue here. As a practical matter, if the special payments are attributable to the week in August when the payments were actually made, it appears that the Employees were back to work and did not receive unemployment benefits from which to make the deductions.

IC § 22–4–5–2 specifies when to attribute some, but not all, categories of income deductible from unemployment compensation benefits. Payments for vacation pay "made subsequent to the normal pay day for the pay period in which the vacation was taken" are deductible from unemployment compensation benefits during the week "in which" the payments are actually paid. IC § 22–4–5–2(c). Generally, payments for idle time are deductible from

unemployment compensation benefits during the week "for which" the payments are made. IC § 22-4-5-2(a). In this case, the payments were made "for" Independence Week Shutdown Pay. *See Briggs v. Review Bd.*, 648 N.E.2d at 1228 (determining that "[t]he only reasonable construction of the deductible income statutes is that the week "for which" payment of holiday pay is made refers to the week when the holiday occurs, while the week "in which" payment is actually made refers to the week that the employee receives holiday pay").[3] The timing of deductibility for the category of "payments in lieu of compensation" is not specified in the statute.[4] *See* IC § 22-4-5-2.

The Review Board did not make any findings to support its conclusion that the special payments constituted idle time pay[5] or payments in lieu of compensation.[6] The Review Board did find that the special payments were treated as regular Independence Week Shutdown Pay as found in Paragraphs 98 and 189 of the National Agreement.

At the hearing before the ALJ, GM elicited testimony from Cheryl Ollila, Assistant Director of Labor Relations for GM, who was instrumental in drafting the memorandum for the one-time payment. Most revealing of GM's treatment of the payments is Ollila's testimony that the special payments were: 1) equivalent to the amounts the Employees would have received for the Independence Day Shutdown Pay had they not been laid off at the time; 2) considered as Independence Week Shutdown Pay for GM's accounting purposes; and 3) considered Independence Shutdown Pay "for purposes of interaction with other provisions of the collective . . . bargaining agreement, specifically paragraphs 98 and 189." *Record* at 93. Paragraphs 98 and 189 relate to the determination of wage progression and vacation entitlement based upon seniority. The special pay was considered,

---

**3.** Here the holiday pay is not disputed, but the reasoning applies equally to the same wording employed by the statute for "vacation" pay. *See* IC § 22-4-5-2.

**4.** The cases we discovered that mention "payments in lieu of compensation" are directed to the question of deductibility, not the timing of the deduction. *See, e.g., Frost v. Review Bd.*, 432 N.E.2d 459, 461 (Ind.Ct.App.1982) (back-pay award to reinstated employee was not "remuneration for services", but was payment "in lieu of compensation for services" and deductible); *Aaron v. Review Bd.*, 416 N.E.2d 125, 137 (Ind.Ct.App.1981) (in determining what constitutes deductible income "payments in lieu of compensation for services" is included); *Puckett v. Review Bd.*, 413 N.E.2d 295, 300-01 (Ind.Ct.App.1980) (noting that "payments in lieu of compensation for services" are deductible from unemployment compensation, and defining "compensation").

**5.** "Idle time" is defined in the Regulations of the Indiana Department of Workforce Development, regarding contributions for unemployment compensation benefits by employers, as:

> Where an employer guarantees to his employees a minimum number of hours of employment per week and makes payments to them for "idle time" when they do not render services for the minimum number of hours, the payment for such idle time constitutes wages subject to contribution.

646 IAC 3-8-5. There is no evidence in the record to suggest that the special payments of the Independence Week Shutdown Pay were made to compensate employees for a minimum number of hours that are guaranteed by GM.

**6.** "Payments in lieu of compensation for services" appears in Ind.Code Ann. § 22-4-4-1 (West 1991) in the definition for "remuneration". In pertinent part, IC § 22-4-4-1 states:

> "Remuneration" whenever used in this article, unless the context clearly denotes otherwise, means all compensation for personal services, including but not limited to commissions, bonuses, dismissal pay, vacation pay, sick pay (subject to the provisions of section 2(b)(2) of this chapter) payments in lieu of compensation for services, and cash value of all compensation paid in any medium other than cash. The reasonable cash value of compensation paid in any medium other than cash may be estimated and determined in accordance with rules prescribed by the board.

just as normal Independence Day Shutdown Pay, as time toward seniority.

Ollila testified that normal Independence Day Shutdown Pay is addressed in paragraph 202 of the National Agreement. The Review Board acknowledged Paragraph 202 of the National Agreement in its findings. Paragraph 202 states:

**Vacation Time Off Procedure**

(202) Management recognizes the desirability of providing vacation time off with pay, up to the vacation entitlement to which the employee's seniority will entitle them (sic) on December 31 of the current year, in a manner that preserves the maintenance of efficient operations while giving consideration to the desires of the employee.

*Record* at 191.

In an internal memorandum drafted by Ollila for the purpose of clarifying the deduction of union dues from the special one-time payment, she stated:

The special payment was for the purpose of providing Independence Week Shutdown (IWS) and Holiday Pay to UAW employees at [GM] locations who did not receive such pay as a result of being on layoff or strike . . .

*Record* at 456.

The record is replete with evidence that GM treated the special payments as normal Independence Week Shutdown Pay and that the Independence Week Shutdown Pay is normally treated as vacation pay. The record is devoid of evidence to support a finding that the special Independence Week Shutdown Pay constituted anything but "[p]ayment of vacation pay made subsequent to the normal pay day for the pay period in which the vacation was taken [and] shall be deemed deductible income with respect to the week in which such payment is made." *See* IC § 22–4–5–2(c). The Review Board's determinations regarding idle time pay and payments in lieu of compensation are not supported by the Review Board's findings or the evidence in the record.

Our reading of the statutes regarding deductibility forecloses a determination that the deductible income falls within more than one of the expressly named categories of payments. IC § 22–4–5–2 specifies the deductibility timing with regard to vacation payments, idle time payments, and others. The statute would be wholly superfluous if the categories and the specifications for the timing of deductibility are interchangeable. We need not further discuss the idle time pay or payments in lieu of compensation because we determine that the evidence here demonstrates that the special payments constituted vacation pay.

GM contends that the parties should be allowed to characterize the special payments in any manner they desire. The memorandum regarding the payments does not specify the character of the payments as anything other than Independence Week Shutdown Pay.

■ Ollila testified that the final paragraph of the memorandum was meant to address unemployment compensation. She stated:

It [the last paragraph] was put in there because it was recognized that employees who would have received unemployment compensation would not receive wages for that week and as a result of the memorandum of understanding, they were receiving payments for that week, that there may be an overpayment situation so it was attempting to address that, that situation.

*Record* at 78. The last paragraph of the memorandum notes that the special payments "may result" in ineligibility for benefits received and that the Employees would be responsible for repayment if that occurred. The last paragraph appears to address only the concern that the special payments may be deductible from unemployment compensation benefits. As noted, whether the payments constituted de-

ductible income is not in dispute. The last paragraph does not reveal any agreement by the parties as to when the deductible income should be deducted from the benefits.

GM also urges us to view the special payments in the context of the purpose of unemployment compensation benefits. GM contends that the benefits are not in place to allow the Employees a "windfall", *i.e.*, payment from the employer and unemployment compensation benefits as well. *See Green Ridge Min. v. Indiana Unemployment Ins. Bd.*, 541 N.E.2d 550 (Ind.Ct. App.1989) (purpose of deductible income is to preclude a windfall in the form of benefits for unemployment when the person then receives back pay in an amount equal to the lost income). GM's focus on the alleged double recovery is not determinative.[7] GM did not make the special payments at the time the payments normally would have been due. The statute regarding the timing of deductible income specifically recognizes that employees may receive such payments after the time the payments would have been due and directs that the payments are deductible from unemployment compensation benefits when the payments are actually paid. IC § 22–4–5–2(c).

In summary, we have determined that the proper category for timing of the deductibility is that for vacation payments made subsequent to the normal pay period in which the vacation was taken. *See* IC § 22–4–5–2(c). As such, the special payments are deductible when they were actually paid. *Id.* The Review Board's decision is reversed and the cause is remanded

for proceedings not inconsistent with this opinion.

Reversed and remanded.

GARRARD, Sr.J., and DARDEN, J., concur.

---

7. The Employees urge that the double recovery theory is no less compelling from the opposite point of view, *i.e.*, GM was allowed a double deduction for the special payments. Ollila's testimony reveals that GM made the special payments from its funds, and then treated the special payments as regular Independence Week Shutdown Pay for its accounting purposes. By the terms of the memorandum on the special payments, GM was then granted a waiver as to its required payments into a joint GM/UAW sponsored fund until such time as GM recovered the total amounts it paid for the special Independence Week Shutdown Pay. Our resolution does not require further consideration of the "double recovery" and "double deduction" theories.